# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2123-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent/
Cross-Respondent,

v.

G.O.-A.,

      Defendant-Appellant/
Cross-Respondent,

and

E.K.,

      Defendant.

_____

IN THE MATTER OF El.A.-K.,
Er.A.-K., and H.A.-K, minors,

      Respondents/Cross-Appellants.

_____

Submitted March 31, 2020 – Decided August 31, 2020

Before Judges Accurso, Gilson, and Rose.

On appeal from the Superior Court of New Jersey,
Chancery Division, Family Part, Burlington County,
Docket No. FN-03-0020-19.

Joseph E. Krakora, Public Defender, attorney for
appellant/cross-respondent (Robyn A. Veasey, Deputy
Public Defender, of counsel; Arthur D. Malkin,
Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, Law Guardian,
attorney for minors/cross-appellant (Meredith Alexis
Pollock, Deputy Public Defender, of counsel; Nancy
P. Fratz, Assistant Deputy Public Defender, of counsel
and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for
respondent/cross-respondent (Sookie Bae-Park,
Assistant Attorney General, of counsel; Jennifer E. St.
Mary, Deputy Attorney General, on the brief).

PER CURIAM

Defendant G.O.-A.[1] appeals from a December 5, 2018 fact-finding order,

now final, that she and the children's father abused or neglected their three

children, a two-year-old girl, a four-year-old boy, and a six-year-old girl, by

leaving them home alone for an hour after midnight. The law guardian for the

children cross-appeals, arguing with the Division that the finding should be

---

[1] The court found both parents, G.O.-A. and E.K., abused or neglected their children in this instance. Only G.O.-A. appeals. "Defendant" refers to G.O.-A.

affirmed, and that we should remand to allow the trial court to enter a "suspended judgment," as well as to consider whether the Division of Child Protection and Permanency's determination to "substantiate" defendant for neglect was arbitrary, capricious, or unreasonable. Because there is substantial credible evidence in the record to support the trial court's finding that defendant abused or neglected her children, we affirm. See N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010).

The facts are straight-forward and almost entirely undisputed. On a June night in 2018, Burlington City Police Department received a call around midnight reporting a screaming child left alone. When police arrived, they found defendant's front door unlocked and her three small children alone. The house was in disarray, and the children were scared. The six-year-old knew her mother's first name but not her last and couldn't tell the officers her father's name. She thought her mother might have gone to the car to get something. The kids said they were hungry.

Their parents returned about 1:00 a.m. By that time, emergency medical services had arrived, checked the children, and placed them in an ambulance to transport them to the police station. Seeing the ambulance, the parents immediately asked whether their children were okay, and said they had only

been gone an hour. Defendant was in shorts and a shirt and no shoes. When officers smelled marijuana in the car and saw an open container of alcohol, the parents were arrested. Each was charged with endangering the welfare of children and possession of marijuana and released on a summons.

Division workers responded to the police station where they spoke to the children and their parents. The six-year-old told them that she and her siblings woke up looking for their mother, could not find her, did not know where she went, got scared, and started crying. She did not know what to do or who to call and did not know how to deal with an emergency.

One of the workers testified she spoke with defendant, who admitted she had left the children at home alone. According to the worker's account of the conversation, defendant and the children's father made a "quick decision" to get some chicken at Buffalo Wild Wings in Moorestown. Defendant told the worker they were gone for about an hour and were arrested when they returned home.

Defendant said she did not normally leave her children home alone, explaining that her brother usually would babysit. She claimed she wanted to stay home that night, but the children's father encouraged her to go with him. The worker reported that defendant did not appear to be under the influence of

drugs or alcohol, which was not true of the children's father. His account mirrored defendant's, including saying defendant wanted to stay home but he convinced her to go out, as they would be gone for less than an hour and the children were asleep. This was the family's first encounter with the Division.

The Division performed an emergency removal of the children and "substantiated" both parents for neglect for inadequate supervision, but deemed the allegations of neglect for failure to provide for the children's basic needs was "not established." By the time of the return date on the order to show cause for the removal, both parents had submitted to drug screens and substance abuse evaluations. E.K. tested positive for marijuana, and it was recommended he seek outpatient drug treatment. Defendant tested negative. No services were recommended for her.

The law guardian reported the children missed their parents and wanted to return home. Defendant's brother agreed to be a full-time supervisor in defendant's home. The court ordered the children returned to their parents, requiring defendant to supervise E.K. with the children.

At the fact-finding hearing, the Division's witnesses testified to the facts related above. One of the workers testified that defendant admitted she had been drinking the night the children were removed but denied smoking

5

marijuana. Neither defendant nor the law guardian offered any witnesses or presented any evidence.

During summation, defense counsel acknowledged defendant "made a mistake" that "had some drastic repercussions," and asked the court for leniency for that "one-time mistake." Defense counsel emphasized this was the family's first involvement with the Division, defendant was fully compliant with services (drug screenings, substance abuse evaluation, and supervised visitation while separated from the children), and was reunified with the children without incident. Counsel asked the court to "downgrade the substantiation to at least establish[ed] or even to not establish[ed] so that [defendant] is not forced to have to deal with the repercussions involving employment opportunities, and more importantly, given that she has demonstrated to the court that she understands . . . the seriousness of what happened." Counsel represented that defendant wanted to move forward but did not believe it was "fair for her to be listed as a substantiated perpetrator on the child abuse registry forever."

The law guardian stated that although this appeared to be an "isolated incident," the evidence supported a finding of neglect under Title 9. Acknowledging the Division had met its burden of proof, the law guardian

6                                                                          A-2123-18T3

added that he would not have objected had the Division dismissed the Title 9 complaint and proceeded under Title 30.

The Division responded that while the court had the responsibility to determine whether the Division had proven child abuse or neglect by a preponderance of the evidence, it retained "the administrative authority to determine whether an allegation of conduct determined by the court to be abuse and neglect is established or substantiated." The deputy argued the Division had established, by a preponderance of the evidence, that defendants neglected the children by leaving them home alone for at least an hour.

The judge acknowledged it was "an unfortunate situation and perhaps it could be a scenario where the Division, given the compliance, might resolve the matter in another fashion other than continuing with substantiation." The judge concluded, however, that there was no question but that the Division had proved its case. The judge found the Division's witnesses credible, and, based on their testimony, that "the children were left alone in a situation where there was potential of harm and imminent risk." He noted that the evidence supported the conclusion that the parents were gone for more than an hour, "[b]ut even if it were only an hour, leaving such young children alone is a situation where imminent harm can befall them."

7

The judge found "significant" the young ages of the children involved: "A six-year-old taking care of a two-year-old is really not adequate. In fact, it's completely inadequate in terms of supervision." He found it was "gross negligence under [N.J.S.A. 9:6-8.21](c)(4) to leave children that age on their own even for an hour." The judge also found the parents knowingly left the children alone without adult supervision, "this is not like those cases where a child is left alone by mistake thinking someone else was there." As a result, he concluded:

> as much as I do feel there's a certain aspect of leniency that I would like to be able to give, the law is the law and I think there was a gross negligence here. I think the parents have no doubt learned a very hard lesson. And I urge that they continue on the road to having this all behind them.

After the judge rendered his decision, defense counsel asserted the court had "the authority to essentially change the finding to established," from "substantiated," which she maintained would still be "under Title 9," but spare defendant inclusion in the registry, which she asked the judge to do. The deputy objected, arguing the court obviously had authority to determine whether the Division had proved its case, but the decision to "substantiate" abuse or neglect or deem it "established," was an administrative decision reserved to the agency. The judge denied the request, stating:

8

> [T]his is a court of equity, and you know, I am tempted in light of the fact of the dismissal now. It seems very inconsistent with the idea of rewarding folks who do what they're supposed to do. But I do agree with [the deputy], the nature of what is the abuse and neglect is concerning enough. In the case the evaluation is from the time of what happened, so even if I had the authority to change the substantiation, I would not.

Defendant appeals, arguing the trial court erred by finding that she "neglected" her children pursuant to N.J.S.A. 9:6-8.21(c). She contends the court's finding was "against the weight of the admitted evidence and testimony" because any risk to her children was not "substantial" and her conduct did not constitute "gross negligence." She also argues "the court should have but failed to consider the totality of the circumstances." Furthermore, because her children suffered no actual harm as a result of her poor judgment, she contends that the court's decision upholding the Division's finding of "substantiated" was excessive and punitive.

We disagree, finding no merit in those arguments. We, of course, are not free to overturn the factual findings and legal conclusions of a trial judge "unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of

<u>Am.</u>, 65 N.J. 474, 484 (1974) (citation omitted).   Because defendant's children suffered no actual harm, the trial court's focus, and ours, shifts "to whether there is a threat of harm, and we look to determine whether the Division has proven 'imminent danger or a substantial risk of harm to a child by a preponderance of the evidence.'" <u>N.J. Div. of Child Prot. & Permanency v. S.W.</u>, 448 N.J. Super. 180, 189 (App. Div. 2017) (quoting <u>N.J. Dep't of Children and Families v. A.L.</u>, 213 N.J. 1, 23 (2013)).

Defendant admitted she left her three children, six, four and two, home alone at night, sleeping, to drive from Burlington to Moorestown and was gone for an hour.  She does not dispute the conduct was negligent and, indeed, admits it was "a serious mistake."  When the children awoke and couldn't find their mother, they were understandably fearful, so much so that a passerby reported their screams to the police.

The children were not old enough to be able to respond to an emergency and could not even advise police of their last name.  Although no harm befell them, that is not the test.  As the Supreme Court has noted, "in focusing on the risk of harm as well as actual harm to a child from grossly negligent conduct of a parent or guardian, the Legislature sought to squash the notion of a 'free pass' if the child did not suffer actual harm." <u>Dep't of Children & Families,</u>

<u>Div. of Child Prot. & Permanency v. E.D.-O.</u>, 223 N.J. 166, 187 (2015).  It takes little imagination to appreciate the dangers of leaving such small children to fend for themselves, even for an hour, in an unlocked house at night.

The trial judge clearly considered the totality of the circumstances, including that this was defendant's first contact with the Division, that no harm came to the children, and defendant's genuine remorse.   But his focus was properly on the children and their safety and not on the consequences of an abuse and neglect finding against their parent.  As the Court in <u>E.D.-O.</u> explained:

> whether a parent's or caretaker's conduct causes an imminent risk of harm is evaluated through the lens of the statutory standard as interpreted and applied by the Court, rather than through the lens of the consequences of a finding of neglect, specifically, enrollment in the Central Registry.  Enrollment in the Registry is a consequence of a finding of abuse or neglect.  We are mindful of the consequences of enrollment in the Registry and the duration of those consequences.  We are aware that for some acts, enrollment in the Registry may seem draconian.  However, it is not the function of this Court to address those seeming excesses by distorting the analysis of the underlying conduct.
>
> [<u>Id.</u> at 195 (citations omitted).]

Faithfully applying the statutory standard is not "punitive."  The judge was not free to ignore the imminent risk of harm defendant's conduct posed to

11

these children by focusing on the potential harm to her from inclusion in the Registry. We reject defendant's arguments to the contrary.

Defendant also contends she was denied the effective assistance of counsel in accordance with Strickland v. Washington, 466 U.S. 668 (1984). She argues her trial counsel's performance "was objectively deficient in several areas," including: (1) failing to offer any evidence or witnesses and challenge the allegations of abuse or neglect; (2) conceding that she abused and neglected her children; (3) failing to remain appropriately informed of the applicable law; and (4) failing to request dismissal of the Title 9 complaint and the conversion of the case to Title 30.

A parent in Title 9 and Title 30 litigation has the right to effective assistance of counsel, N.J. Div. of Youth & Family Servs. v. M.D., 417 N.J. Super. 583, 609 (App. Div. 2011); N.J. Div. of Youth and Family Servs. v. B.H., 391 N.J. Super 322, 345-46 (App. Div. 2007), evaluated under the Strickland standard. B.H., 391 N.J. Super. at 345-46; N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 307 (2007). To succeed on a claim of ineffective assistance, defendant must establish, first, that "counsel's representation fell below an objective standard of reasonableness" and, second, that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-88, 694. Defendant cannot establish her claim under that standard.

Defendant does not identify any evidence her counsel could have presented or any witness she might have called to establish a defense to the Division's case. She conceded she left her children alone, and none of the factors she contends counsel should have argued in her defense, her lack of prior involvement with the Division, her strong bond with her children, the lack of harm to them, her remorse and assurances it would not happen again, was relevant to her conduct at the time of the incident. See E.D.-O., 223 N.J. at 189.

We do not agree her counsel "conceded" defendant abused or neglected her children by asking the court to change the Division's internal finding from "substantiated" to "established." While counsel was incorrect that the judge had such power, the error did not affect the judge's finding, as the judge had already announced his ruling when her counsel made the request. More important, defendant cannot establish prejudice. The court found defendant left her children unsupervised, and that the conduct constituted gross negligence based on credible evidence presented at the fact-finding trial, not

based on defense counsel's performance. She does not explain how the court's findings and determinations were erroneous, or provide any support for her claim that the judge could have granted a motion to dismiss the Title 9 complaint and converted the case to one under Title 30 following the return of her children. There was simply no "reasonable probability" that, but for counsel's alleged unprofessional errors, "the result of the proceeding would have been different," because there was sufficient credible evidence in the record that defendant neglected her three very young children by having left them home alone.

The law guardian's cross-appeal requires only brief comment. We decline to consider the argument that the judge should have considered and entered a suspended judgment because that relief was not sought in the trial court. State v. Robinson, 200 N.J. 1, 20 (2009); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). We thus need not consider whether the law guardian has standing to raise this argument on behalf of defendant, which defendant urges us to reject in any event.

We likewise reject the law guardian's request that we remand this matter to determine whether the Division's substantiation was arbitrary, capricious, and unreasonable for having failed to comply with its own regulations by "not

14

having the child protective investigators determine (or involved in) the finding of the investigation."

Leaving aside the lack of support for that argument on the facts in the record, the law guardian's position perplexes us. The law guardian joins with the Division in recommending we affirm the judgment that defendant abused or neglected her children. She asserts in her briefs on behalf of the children that defendant "was grossly negligent and neglected her children when she left them unattended" and that "the trial court's finding of abuse or neglect was supported by a preponderance of evidence and [defendant] failed to provide a basis for reversing that decision." The Law Guardian also argues that defendant received effective assistance from her counsel. Because we agree on both counts, we decline the suggestion of a remand to the agency.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2123-18T3